```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MIGUEL ROSAS, ARTURO RIVERA
     and ANGEL RODRIGUEZ,
 4   individually and on behalf of
     others similarly situated,
 5
                 Plaintiffs,
 6
            v.                                 12 CV 3175 (KBF)
 7
     AKRAM RESTAURANT MANAGEMENT
 8   INC. (d/b/a DA GENNARO), and
     AKRAM GHOLIVADEH (aka AKRAM
 9   GHOLIZADEH),

10               Defendants.

11   ------------------------------x
                                             New York, N.Y.
12                                           February 20, 2013
                                             2:11 p.m.
13
     Before:
14
                       HONORABLE KATHERINE B. FORREST,
15
                                             District Judge
16
                              APPEARANCES
17
     MICHAEL FAILLACE & ASSOCIATES, P.C.
18        Attorneys for Plaintiffs
     MICHAEL A. FAILLACE
19   YOLANDA RIVERO

20   MILMAN LABUDA LAW GROUP PLLC
          Attorneys for Defendants
21   MICHAEL J. MAURO
     MATTHEW BROWN

22

23

24

25
```

1               (In open court)
2               THE DEPUTY CLERK:  In the matter *Angel Rodriguez, et
3     al. v. Akram Restaurant Management Inc., et al.*, 12 CV 3175.
4               Counsel, please state your names for the record.
5               MR. FAILLACE:  Michael Faillace from Michael Faillace
6     & Associates, P.C. representing the plaintiffs.  I'm here with
7     my associate, Yolanda Rivero.  Good afternoon, your Honor.
8               THE COURT:  Good afternoon.  Good afternoon,
9     Ms. Rivero.
10              MS. RIVERO:  Good afternoon.
11              MR. MAURO:  Good afternoon, your Honor.  My name is
12    Michael Mauro, counsel for the defendants, Milman Labuda Law
13    Group.  With me is my associate, Matthew Brown.
14              THE COURT:  All right.  Good afternoon, both of you.
15              MR. BROWN:  Good afternoon.
16              THE COURT:  All right.  We are here for a couple of
17    purposes.  One is just a status conference just to figure out
18    where we are really with discovery.  That leads us directly
19    into the other issue, which is what we should do about the
20    issues that arose in the deposition that occurred of the
21    plaintiff and what's the right way to proceed there.
22              Let me first, though, get a baseline on where we are
23    in terms of the substantive discovery in this case.  I mean, I
24    assume that we are, by court order, done and we've got a trial
25    set for March 11th.

1           Is there really anything else in this regard to be
2    discussed?
3           MR. MAURO:  From the defendant's standpoint, your
4    Honor, there are some remaining discovery pursuant to an order
5    that-- I apologize, your Honor.  There's some discovery that's
6    outstanding pursuant to a discovery order that you had issued,
7    your Honor, that we still haven't received.
8           THE COURT:  That's part of your motion, Mr. Mauro?
9    You included that I think in your motion.
10          MR. MAURO:  Correct.  We've highlighted there are a
11   few outstanding issues.  That's it with respect to outstanding
12   discovery.
13          THE COURT:  All right.  Do you plan on making a-- the
14   time for making a substantive motion on the merits as opposed
15   to on some of the discovery issues, Rule 37-type issues, was
16   supposed to have been on the same date that you served the
17   other motion.
18          Did you not have another motion?  Was there not
19   another motion?
20          MR. MAURO:  Well, your Honor, with respect to-- there
21   are other issues that we would have moved to be on dispositive
22   tracks with respect to, for example, eligibility for the tip
23   credit, minimum wage violation, spread of hours because, based
24   on testimony, documents provided by the plaintiffs, all of
25   those claims are gone.  The dispute would really revolve around

1   the issue of the overtime hours, which we have records that
2   show it's nowhere near what's been claimed.
3            THE COURT:  All right.  Let me hear then on this issue
4   first from plaintiffs' counsel.
5            Number one, if they moved -- is there any way in which
6   you folks would resolve the tip issues, et cetera, et cetera,
7   to get yourselves down to a case on consent that really has to
8   do with the overtime hours, or are these fact issues still
9   lively in dispute?
10           MR. FAILLACE:  Your Honor, the fact issues are very
11  likely in dispute in the depositions as well as in our answers
12  to their discovery requests.  My clients made very clear that
13  they were being made to do other than tip work and that part of
14  their tips were being withheld.  So, your Honor, there are all
15  sorts of issues.  We absolutely would not accept any of their
16  positions.
17           THE COURT:  All right.
18           MS. RIVERO:  Your Honor, I also just want to make a
19  representation that any outstanding discovery issues I will
20  discuss with opposing counsel and get that to them.
21           THE COURT:  All right.  That's going to be part of
22  your response, then, to their motion?  Part of their motion for
23  sanctions has to do with noncompliance of the Court order on
24  discovery.
25           So before you've answered that, you will have

1   complied?

2               MS. RIVERO:  Yes.

3               THE COURT:  So why don't you confer with Mr. Mauro and

4   see whether you can moot that the part of the motion.  And then

5   in your reply, you can tell me what's been mooted or not in

6   your opposition and Mr. Mauro can either agree or disagree with

7   it being mooted.

8               MS. RIVERO:  That's fine, your Honor.

9               THE COURT:  Okay.  All right.  So I've got then what

10  I've got in terms of the motions.

11              Mr. Mauro, it sounds like there's going to be disputed

12  issues of fact on these other topics.  So I won't hold my

13  breath for a summary judgment on those.

14              MR. MAURO:  Understood, your Honor.

15              THE COURT:  Okay.  So this brings us to the other

16  topic, which really feeds into the Rule 37 motion that

17  Mr. Mauro has brought.

18              First, I want to ask Mr. Faillace and Ms. Rivero,

19  understanding that you disagree with the characterization of

20  this issue -- and I've read the declarations that you've put

21  in.  I've also read Mr. Mauro's characterization of the

22  declarations, but let's just try to put those to the side for

23  one moment and ask you folks, first, is there anything which

24  you think should be done or that you would offer you would do

25  in connection with these issues that have arisen, or should we

1    just leave it up to the Court to get the filings as they come

2    in and I'll hold a hearing if I need to and we'll proceed?  But

3    first I want to figure out if there's something which you folks

4    would agree occurred, if anything, along the lines of what

5    they're suggesting and/or, if so, what would be the appropriate

6    response?  What do you think the Court should-- what's your

7    view as to what the Court should do?

8              MR. FAILLACE:  Your Honor, as we have made it clear,

9    your Honor, we disagree with their position, your Honor.  They

10   are misrepresenting the facts.  And, your Honor, I think this

11   Court should just permit us to continue representing my

12   clients, your Honor.  In no way, your Honor, was what Mr. Mauro

13   argues I did to the interpreter in any way intentional.  There

14   were witnesses in the room.  The witnesses have made their

15   deposition.  That's why I brought Ms. Rivero with me, because

16   she was there and she saw the witnesses in the room, your

17   Honor.

18             So I just -- your Honor, as I cited in the case law,

19   in my position paper, there's no grounds -- even if that were

20   to happen, there's no legal grounds for having me removed from

21   this case.  And I totally disagree.  Nothing like that

22   happened.  We were having an argument and I was moving my hand,

23   as I always do.  And in moving my hand, I hit the lady in the

24   head.

25             Yolanda is right there.  She was right there.  The

1  lady just said, "Oh, I was just startled." And she talked to
2  me right after this. She said, "Don't worry about it. I was
3  just startled." Then she engaged in a long, friendly
4  conversation with me. So this fact that she was uncomfortable,
5  that I attacked her, that I presented a danger, your Honor, I'm
6  sorry that we've had to go through this, your Honor.
7             In my 30 years of experience, I've had hundreds and
8  hundreds of depositions. I've never had somebody try to do
9  this. I really wish your Honor would bring this case back to
10 the merits. My clients are owed their overtime and they are
11 owed their minimum wage and they are owed their tips, the
12 difference between what they got, your Honor, rather than
13 spending time on this.
14            Your Honor, if I were, as Mr. Mauro represents me, a
15 danger, why haven't any lawyers in the last 30 years brought me
16 to the Court's attention. Why haven't I been sanctioned by any
17 conduct agency?
18            THE COURT: Well, I wouldn't use the past as a preview
19 of the present because what happens in a particular deposition
20 room happens or it doesn't happen. And just to remind you, I
21 started with the merits of this case today. I did not start
22 with this issue. I particularly focused on the merits for a
23 reason, which is that your clients deserve to have their case
24 resolved on the merits.
25            What I'm trying to do is separate out as much as

1    possible-- frankly, possible disciplinary actions, which I
2    perceive as more of what we're talking about than anything
3    else, in terms of whether or not Ms. Rivero or you,
4    Mr. Faillace, can represent these clients.  They have brought
5    their case.  What occurred in that room I want to make sure
6    does not unduly prejudice their case.
7             Now, they also have to comply with discovery through
8    counsel.  And that's the subject of-- a big subject of
9    Mr. Mauro's motion.  So if discovery hasn't been complied with,
10   then the Court will deal with that after it receives from
11   Ms. Rivero and from you, Mr. Faillace, your response to whether
12   you've been able to resolve those issues and thereby moot the
13   issues.
14            But I cannot just take the lack of any action on the
15   past as precedent for whether or not anything should be done
16   now.  What I'm trying to figure out, quite frankly, is whether
17   or not there's any piece of this you would say occurred or
18   you're sorry for or something so that we can move beyond this.
19   I'm not suggesting that that would be sufficient or adequate.
20   Or are we going to have to have a hearing and have people in
21   here and put them under oath and figure out whether or not
22   people are going to say you were out of control?  Because if
23   that's the case and they're going to say that, then why air it
24   in open court?  Only you folks know what happened.  I don't.
25            MR. FAILLACE:  Your Honor, I am willing to agree that

1   we got into an argument and that I was making hand gestures and
2   I touched or hit the lady's head.  I've apologized to her.  I
3   apologized to the Court.  I have said it in my position paper,
4   I will be very careful in the rest of this case to not get-- or
5   let Mr. Mauro or any of the opposing counsels let me get
6   flustered or raise my voice.  I will make an effort to act as
7   the Court and, you know, as I am expected to act in these
8   cases.  I'm willing to take every effort and do that in the
9   future.  I mean, I don't know what else to give you, your
10  Honor.
11           THE COURT:  Well, that is, I think, very helpful,
12  Mr. Faillace.
13           MR. FAILLACE:  I mean, I don't have anything else to
14  say.  I'm bringing up the past, your Honor, because I know I
15  can do it because I've done it for 30 years.
16           THE COURT:  All right.  Well, let's do this.  What
17  we're going to do now is respond -- Ms. Rivero, you,
18  Mr. Faillace, are going to respond to Mr. Mauro's motion on the
19  merits.  You'll do that as you deem appropriate in light of
20  whatever the facts are.  Then you'll have a chance, Mr. Mauro,
21  to reply and then we'll decide this.
22           I remind everybody we're still scheduled for trial.  I
23  will decide that issue and whether or not there's going to be--
24  what the discovery issues are and whether or not it's going to
25  result in adverse inferences of any kind and/or dismissal or

1    striking anything when it's fully briefed.

2              Which is when?

3              THE DEPUTY CLERK:  I think it's the 25th or 27th.

4              MR. MAURO:  I think it's the last day of the month.

5              THE COURT:  The last day of the month.  All right.  So

6    the 28th.  So then I'll have it and it will be decided that

7    weekend-ish, there or thereabouts.  So you'll know sufficiently

8    far in advance of the March 11th trial date.  All right.  How

9    we're going to be-- what the size of your case is and what the

10   nature of your case is at that point.

11             Mr. Mauro, it looked like you wanted to say something.

12             MR. MAURO:  Judge, I just have to be heard on what

13   counsel has represented here.  My papers are clear.  I'm not

14   going to continue to burden the record on what happened.  You

15   know, this counsel has had an issue with my office in the past

16   as well.  I'm not going to get into that now.  Perhaps I will

17   do it based on what I see from their motion in opposition on

18   Friday.  It was a disgraceful thing that happened.  I'm not

19   going to raise it right now.

20             But I have to say, your Honor, as long as I've been

21   practicing, I've never had what happened in that deposition

22   ever.  No professionals would ever act that way ever.  And he

23   created a serious problem in that room that day for the people

24   who were there.  Okay?  And as far as any particular remedial

25   measures you may take or may consider, there is a pending--

1    there's a related case here brought by the same counsel, same
2    defendants --
3             THE COURT:  Well, you'll see I have taken your letter,
4    I've posted it to the docket.  I've sent a copy to Judge
5    McMahon.
6             MR. MAURO:  Yes, I understand that, your Honor.
7    There's actually -- with the same defendant in this case, there
8    is a related case before you, Judge, with the same counsel.  If
9    you recall --
10            THE COURT:  Do you know the civil action number on
11   that?
12            MR. MAURO:  Yes.  It's 12 CV 9125.
13            THE COURT:  What's the name of the plaintiff?
14            MR. MAURO:  The named --
15            THE COURT:  It's not Rosa.  Rosa is the one before
16   Judge McMahon.
17            MR. MAURO:  No, that's the other action before Judge
18   McMahon.  The last name is Calle, C-a-l-l-e, and some other
19   plaintiffs versus the same defendants.  What had happened
20   there, your Honor, was they missed the deadline to file the
21   216(b) and they filed it two months after the fact and you
22   denied them the opportunity to continue on.  And the
23   individuals who had opted in-- well, quote/unquote opted in
24   prior to the motion even being made, they are out of the
25   current case we're here on, and then filed a new action against

1     the same defendants and it was marked related and it's before
2     you.
3              So that also, your Honor, may be an issue with the
4     trial in this case because we have the same defendant,
5     plaintiffs who have the same allegations against the same
6     defendants in this case, which is an issue going forward.  So
7     it's essentially the same facts as what they're alleging here.
8              So, again --
9              THE COURT:  What was your position on the prior?  Was
10    it that we shouldn't join them together?
11             MR. MAURO:  It's just been marked related, your Honor.
12    We put our answer --
13             THE COURT:  No, what I'm trying to figure out is one
14    of the reasons that we said you can't file in this action, was
15    that something because we were-- were we responding to some
16    opposition by your client?
17             MR. MAURO:  Oh, that's correct, your Honor.  Yes.
18             THE COURT:  Okay.  So that makes it a little bit more
19    difficult to say we're sort of damned if we do, damned if we
20    don't.  In other words, we've separated out the actions because
21    you wanted them separated out, but now you're saying we can't
22    try them unless they're tried close in time together?
23             MR. MAURO:  Well, the relief that was requested, I
24    think it was sometime in November/early December, was that the
25    216(b) shouldn't be considered.  And the Court agreed with us

1    and said, correct, it's time barred.  It's two months after the
2    fact.  Anyone who opted in, they're not a part of this lawsuit.
3    And that was it and then they refiled the independent action.
4    That's what happened.
5             THE COURT:  But otherwise compliant with the statute
6    of limitations, et cetera, et cetera?
7             MR. MAURO:  Well, I mean, there's -- the FLSA has
8    claims of six years.  So, of course, they've lost a certain
9    period of alleged liability, so there has been a curtailing --
10            THE COURT:  Well, we won't take off track the March
11   11th action.  That will stay on track.
12            MR. MAURO:  I understand, your Honor.  We're moving
13   forward on it.
14            THE COURT:  We'll figure out the size of it and shape
15   of it as we decide the resolution of the pending motion.
16            MR. MAURO:  Right.  Your Honor, just the last point,
17   really, before I got into that digression.  You know, again,
18   your Honor, I just haven't seen anything like what I saw and
19   was subjected to.  How it relates to the other case is, quite
20   honestly, you know, you've already ordered in this case that
21   Ms. Rivero defend the depositions in the existing case.  And I
22   would, at a bare minimum, request that same relief going
23   forward if we move into discovery schedule on another matter.
24            THE COURT:  Well, let me ask this, to see whether or
25   not you folks-- it may be that both sides agree that neither

1    you nor Mr. Faillace would choose to be defending or taking

2    depositions against each other in the current-- with the

3    current state of play.  So it may be that on consent and

4    without court intervention or court order, Mr. Faillace and

5    Ms. Rivero would agree that Ms. Rivero would defend those

6    depositions or take any depositions in that case as opposed to

7    Mr. Faillace.  You've got other partners in your office or

8    associates.  I don't mean to suggest that they couldn't.  But

9    why don't we have you folks deal with that first, before I

10   impose a court order on that?  Because it may be something that

11   can be done on consent.  All right?

12            Mr. Mauro, was there something else?  Listen, I'm not

13   in any way suggesting that the issue that's been brought to the

14   Court's attention isn't serious.  I take it very seriously.  I

15   couple of things I take seriously.  I take the fact that the

16   allegations, I don't know if they're correct or incorrect,

17   relating to the case before Judge McMahon, and whether or not

18   there was, in fact, authorization to sue or not as a very

19   serious allegation.  And it will be-- we'll figure that out.

20   That's an important-- it's a credibility issue in this case,

21   but it has serious implications, also, generally.  But I don't

22   know the merits of it.

23            And I want to make sure, and it's my role to make

24   sure, that we proceed in a measured way, to have the facts come

25   out and be fully aired before the Court makes any

1   determinations or takes any particular action.  That's why I'm
2   just trying to give everybody the opportunity to say what
3   they're going to say and make any concessions they want to make
4   before we engage in a fact-finding exercise, if that's what we
5   have to do.
6             All right.  Is there anything else?
7             MR. FAILLACE:  Yes, your Honor.
8             THE COURT:  Yes, Mr. Faillace.
9             MR. FAILLACE:  Your Honor, just for the record, to set
10  it straight, the motion, the 216(b) motion, your Honor, was one
11  week late.  Mr. Mauro's misrepresenting it's two months late.
12  It was a week late.  They had agreed that I could do it on the
13  16th, and I mistakenly thought I could do it on the 31st.  I
14  filed the motion on the 31st and your Honor accepted their
15  motion to dismiss it.  So, you know, just for the record.
16            THE COURT:  And you folks have a number of cases
17  before me.  So long as everybody just understands in my
18  individual rules, I make it clear the stipulations should not
19  be the normal way people engage in extensions; that if you want
20  to get an extension, you should make a request and suggesting
21  it's on consent, but otherwise you're at your peril because I
22  may or may not agree with a stipulated extension.  So from my
23  perspective some things are late, but it may not be late as
24  between the two of you.
25            In any event, I see Mr. Mauro disagrees.  This is a

1  point upon which we're both going to disagree.  I've already
2  ruled on that issue and I've already dismissed it.  So we are
3  where we are with that second case.
4          What I'm going to do in this case is I'm going to wait
5  and see the papers as they come in.  I'm going to rule
6  promptly.  We've got the trial date set for March 11th.
7  Otherwise it's as stated.  We do have a court reporter here so
8  there's a transcript of this proceeding, and I would encourage
9  you all to keep it as part of your records until we get to the
10 end of these various conduct issues.
11         All right.  Anything else?  We are adjourned on this.
12 Thank you.
13         (Adjourned)